No. 24-50717

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

State of Texas,

Plaintiff – Appellant,

v.

Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security;
United States Department of Homeland Security; Merrick Garland,
U.S. Attorney General; United States Department of Justice,

Defendants – Appellees.

BRIEF FOR *AMICUS CURIAE*
IMMIGRATION REFORM LAW INSTITUTE
IN SUPPORT OF APPELLANT

MATT A. CRAPO
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

# SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1 and Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute.

DATED: November 27, 2024        Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorney for *Amicus Curiae*

# TABLE OF CONTENTS

                                                     **Page**

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF AMICUS CURIAE ......................................................................1

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................5

    *Enforcement Priorities* does not control this case ............................................5

CONCLUSION ......................................................................................................9

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ariz. Dream Act Coalition v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) ............................................................... 1

*Galvan v. Press*,
    347 U.S. 522 (1954) ........................................................................... 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................... 7

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892) ........................................................................... 8

*Matter of Silva-Trevino*,
    26 I. & N. Dec. 826 (B.I.A. 2016) ..................................................... 1

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ........................................................................... 1

*United States v. Texas ("Enforcement Priorities")*,
    599 U.S. 670 (2023) ........................................................... 1, 4, 5, 6, 9

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
    50 F.4th 164 (D.C. Cir. 2022) ........................................................... 1

## CONSTITUTION AND REGULATIONS

U.S. CONST. art. III, § 2 .............................................................................. 7

8 C.F.R. § 208.33(d) .................................................................................... 7

8 C.F.R. § 1208.33(e) .................................................................................. 7

**MISCELLANEOUS**

Circumvention of Lawful Pathways
   88 Fed. Reg. 31314 (May 16, 2023) .................................................................. 4, 7

Fed. R. App. P. 29(a)(2) ........................................................................................ 1

# INTEREST OF *AMICI CURIAE*[1]

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas ("Enforcement Priorities")*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

# INTRODUCTION

This case arises in the context of the federal government's ongoing abdication of its duty to protect the various States from invasion and to take care

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this *amicus* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

that the nation's immigration laws are faithfully executed. Since inauguration day on January 20, 2021, the federal government has terminated effective immigration enforcement policies such as the Migrant Protection Protocols (colloquially known as the "Remain in Mexico policy"), restricted interior immigration enforcement, and ceased all border wall construction.[2]

Not content with dismantling several of the most effective programs aimed at minimizing illegal immigration, the Department of Homeland Security ("DHS") has sought to create new avenues to allow inadmissible aliens to enter the United States. This case involves one such avenue. DHS allows inadmissible aliens to use its CBP One mobile application ("CBP One app") to schedule an appointment at a

---

[2] The federal government's abdication of its responsibility to secure the border and protect the country from invasion has resulted an estimated 5.5 million illegal aliens' crossing the border from inauguration day in 2021 through fiscal year 2022. *FAIR Analysis: 5.5 Million Illegal Aliens Have Crossed our Borders Since Biden Took Office—How is Secretary Mayorkas Still Employed?*, available at: https://www.fairus.org/press-releases/border-security/fair-analysis-55-million-illegal-aliens-have-crossed-our-borders (last visited Nov. 26, 2024). The number of encounters has only increased since. In fiscal year 2023 alone, Customs and Border Protection ("CBP") encountered over 3.2 million aliens, including nearly 2.5 million at the southwest border. CBP, *Nationwide Encounters*, available at: https://www.cbp.gov/newsroom/stats/nationwide-encounters (last visited Nov. 26, 2024). And there were more than 2.1 million encounters at the southwest border in fiscal year 2024. *Id.* Eighty-five percent of aliens encountered on the southern border, moreover, are released into the United States. Fox News, *Mayorkas tells Border Patrol agents that 'above 85%' of illegal immigrants released into US: sources*, available at: https://www.foxnews.com/politics/mayorkas-tells-border-patrol-agents-illegal-immigrants-released-into-us-sources (last visited Nov. 26, 2024).

port of entry where aliens without valid admission documents may "present themselves for inspection and to initiate a protection claim …." DHS Press Release, Jan. 12, 2023, *DHS Scheduling System for Safe, Orderly and Human Border Processing Goes Live on CBP One App*, available at: https://www.dhs.gov/news/2023/01/12/dhs-scheduling-system-safe-orderly-and-humane-border-processing-goes-live-cbp-onetm (last visited Nov. 26, 2024). DHS describes the CBP One app as "part of a number of additional border enforcement measures the Administration is taking to expand pathways for legal immigration …." *Id.* By using the CBP One app, DHS states that it will "dramatically expand the processing of asylum-seekers along the U.S.-Mexico border by admitting nearly 40,000 migrants" each month (or 1,250 appointments each day). Camilo Montoya-Galvez, CBS News, May 31, 2023, *U.S. plans to admit nearly 40,000 asylum-seekers per month through mobile app*, available at: https://www.cbsnews.com/news/asylum-seekers-cbp-one-mobile-app-u-s-plans-admit-nearly-40000-monthly/ (last visited Nov. 26, 2024).[3]

---

[3] DHS subsequently increased the number of appointments to 1,450 per day (or more than 43,000 per month). DHS Press Release, June 30, 2023, CBP One Appointments Increased to 1,450 Per Day, available at: https://www.cbp.gov/newsroom/national-media-release/cbp-one-appointments-increased-1450-day (last visited Nov. 26, 2024).

On May 16, 2023, Defendants promulgated the Circumvention of Lawful Pathways rule. 88 Fed. Reg. 31314 (with an effective date of May 11, 2023). In this rule Defendants created a presumption that certain aliens who enter the United States through Mexico are ineligible for asylum while simultaneously creating an exception from this presumption for any alien who scheduled an appointment at a port of entry through the CBP One app. 88 Fed. Reg. at 31321-22. Texas challenged the lawfulness of Defendants' exception to the rule, alleging that the exception relied upon an unlawful exercise of Defendants' parole authority.

The district relied on the Supreme Court's decision in *United States v. Texas ("Enforcement Priorities")*, 599 U.S. 670 (2023), in concluding that Texas lacks standing to challenge the CBP One app exception to the Circumvention of Lawful Pathways rule. ROA 744 (Record Excerpts at RE.196). The Supreme Court's decision in *Enforcement Priorities*, however, "is narrow and simply maintains the longstanding jurisprudential status quo," 599 U.S. at 686, and expressly disavowed that its holding would control cases such as this, in which the challenged policy confers legal benefits or legal status. *Id.* at 683. The district court therefore erred in ruling that *Enforcement Priorities* controls this case.

# ARGUMENT

## *Enforcement Priorities* does not control this case.

The district court relied on the Supreme Court's decision in *Enforcement Priorities* in holding that Texas does not have standing. ROA at 744. In holding that Texas failed "to allege a judicially cognizable harm," ROA 744, the district court misconstrued and conflated the relief sought by Texas in this case with the type of relief sought in *Enforcement Priorities*. The district court construed Texas's complaint as seeking a judicial order "directing 'the Executive Branch to change its' asylum policies so that the Executive Branch denies asylum or parole to more migrants." ROA 744 (quoting *Enforcement Priorities*). Texas, however, did not ask the Court to order Defendants to change its asylum policies or take any specific enforcement actions. Because the district court's ruling is based on a misconception of Texas's alleged harm (and relief sought), this Court should reverse its decision.

The Supreme Court in *Enforcement Priorities* held that federal courts lacked the authority to "order the Executive Branch to take enforcement actions against violators of federal law," and the States in that case therefore lacked Article III standing to litigate such a dispute. 599 U.S. at 685. The Supreme Court explained that

> This case is categorically different … because it implicates only one discrete aspect of the executive power—namely, the Executive

5

> Branch's traditional discretion over whether to take enforcement actions against violators of federal law. And *this case raises only the narrow Article III standing question of whether the Federal Judiciary may in effect order the Executive Branch to take enforcement actions against violators of federal law*—here, by making more arrests. Under this Court's Article III precedents and the historical practice, the answer is no.

*Id.* at 684-85 (emphasis added); *see also id.* at 686 ("[T]he States have brought an extraordinarily unusual lawsuit. They want a federal court to order the Executive Branch to alter its arrest policies so as to make more arrests.").

Contrary to the district court's reasoning, Texas did not seek a judicial order directing the Executive Branch to "change its asylum policies so that the Executive denies asylum or parole to more migrants." ROA 744. Instead, Texas asked the district court to "hold unlawful and set aside" the Rule's exception for aliens who use the CBP One app and enjoin implementation of the exception and parole practices. ROA 460 (Prayer for Relief, First Amended Complaint); *see also* ROA 451-59 (alleging that the CBP One app scheduling system is contrary to law, arbitrary and capricious, and ultra vires). The Supreme Court's holding in *Enforcement Priorities* turned on the fact that federal courts *lack the authority* to order the Executive Branch to alter its arrest policies so as to make more arrests. 599 U.S. at 686. Texas asked for no such relief in this case.

6

To be sure, granting the relief that Texas seeks in this case and striking down the exception to the rule as unlawful would naturally result in more aliens falling within the ineligibility presumption under the Rule. But that is the natural consequence of the ineligibility presumption created by the Rule, not judicial decree (as in *Enforcement Priorities*). Indeed, Defendants anticipated that some aspects of its Rule may be ruled unlawful and included a severability clause that would preserve those aspects of the Rule that are found lawful. *See* 88 Fed. Reg. at 31451 (severability clause to be codified at 8 C.F.R. § 208.33(d)); *id.* at 31452 (severability clause to be codified at 8 C.F.R. § 1208.33(e)). Thus, Defendants have already determined that they will implement the ineligibility presumption even if the CBP One app exception is deemed unlawful. Thus, unlike in *Enforcement Priorities*, there are no separation of powers concerns in this case.

The federal judicial power extends, *inter alia*, to "Cases … arising under [the] Constitution [and] the Laws of the United States." U.S. CONST. art. III, § 2. At its minimum, standing presents the tripartite test of whether the party invoking a court's jurisdiction raises a sufficient "injury in fact" under Article III that (a) constitutes "an invasion of a legally protected interest," (b) is caused by the challenged action, and (c) is redressable by a court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992) (interior quotation marks omitted). Texas ably argues that it is entitled to special solicitude in the standing analysis to protect its quasi-

sovereign interests, Appellants' Br. at 32-34, and amply demonstrates the requisite injury, causation, and redressability for standing. *Id.* at 16-32.

*Amicus* would add that it has long been recognized that the power "to forbid the entrance of foreigners … or to admit them only in such cases and upon such conditions as it may see fit to prescribe" is an inherent sovereign prerogative that the States surrendered to Congress upon their admission to the Union. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are . . . entrusted exclusively to Congress . . . ."). In enacting the Immigration and Nationality Act ("INA"), Congress fashioned a comprehensive immigration scheme in which it defined which classes of aliens are considered lawfully present, which are eligible for work authorization or parole, and which are subject to removal. Although Congress has permitted DHS to exercise broad discretion in enforcing many aspects of the immigration system, it did not give the Executive branch free reign to expand statutory benefits, relief, or lawful status to classes of aliens other than those set forth in the INA. Having surrendered its sovereign prerogative to regulate immigration to Congress, Texas and the other States therefore have a strong quasi-sovereign interest in the strict enforcement of immigration law as established by Congress.

In *Enforcement Priorities*, the Supreme Court stressed that its holding "is narrow and simply maintains the longstanding jurisprudential status quo," 599 U.S. at 686, and expressly disavowed that its holding would control cases involving policies which confer legal benefits or legal status. *Id.* at 683. The relief sought by Texas in this case is typical in cases brought under the APA and in line with longstanding jurisprudential practice. Because the district court erred in misapplying *Enforcement Priorities* to this case, this Court should reverse the district court's judgment.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's judgment.

DATED: November 27, 2024      Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
mcrapo@irli.org
chajec@irli.org

Attorneys for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on November 27, 2024, I electronically filed the foregoing *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matt Crapo
Matt A. Crapo

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 29(a)(5) because it contains 1,975 words, as measured by Microsoft Word software, which is fewer than one-half of the 13,000 word limit for a party's principal brief under Fed. R. App. P. 32(a)(7)(B). The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

DATED: November 27, 2024          Respectfully submitted,

<u>/s/ Matt Crapo</u>
Matt A. Crapo