No.24-50717

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS,

*Plaintiff-Appellant*,

v.

ALEJANDRO MAYORKAS, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MERRICK GARLAND, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Texas, Del Rio Division

**REPLY BRIEF FOR APPELLANT**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

RYAN G. KERCHER
Deputy Chief, Special Litigation Division
Texas State Bar No. 24060998
Ryan.Kercher@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548

# Table of Contents

Table of Contents .................................................................................................. 1

Table of Authorities ............................................................................................. 2

Introduction ......................................................................................................... 3

Argument .............................................................................................................. 3

    I.   Appellees fail to engage with Texas's well-pled facts. ................................. 3

        A.  Texas pled the Rule increases unlawful and injurious immigration. ....... 3

        B.  Appellees' factual arguments cannot overcome Texas's allegations. ..... 4

    II.  Appellees fail to engage with applicable law. ............................................. 6

        A.  *Enforcement Priorities* is not a sweeping bar on State standing. .............. 7

        B.  Appellees cannot ignore binding Fifth Circuit precedent. ................... 8

Conclusion ............................................................................................................ 9

Certificate of Service ..................................................................................... 10

Certificate of Compliance ............................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 6

*Bennett v. Spear*,
   520 U.S. 659 (2021) .................................................................................. 9

*Clapper v. Amnesty Int'l USA*,
   568 U.S 398 (2013) ................................................................................... 6

*Fed. Election Comm'n v. Cruz*,
   142 S. Ct. 1638 (2022) .............................................................................. 6

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) .................................................................................. 8

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) .................................................................................. 9

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021) ..................................................................... 9

*Texas v. Garland*,
   No. 5:23-CV-034-H, 2024 WL 967838 (N.D. Tex. Feb. 27, 2024) ...................... 9

Texas v. United States,
   50 F.4th 498 (5th Cir. 2022) ..................................................................... 9

*Texas v. United States*,
   599 U.S. 670 (2023) .............................................................................. 7, 8

**Constitutional Provisions & Statutes**

8 U.S.C. § 1182(d)(5)(A) ................................................................................ 8

# Introduction

Federal discretion over parole decisions regarding illegal aliens is not *carte blanche* and it does not extend to the lawless admissions of hundreds of thousands of illegal aliens into the United States. The consequences of Appellees' actions at the border are manifest, manifold, and largely borne by the States who much care for droves of unlawfully present aliens.

Appellees pin their response on a misinterpretation of *Enforcement Priorities* and on disputes over the veracity of Texas's well-pled allegations. Neither suffices to overcome Texas's standing in the instant suit. The Court should reverse and remand.

# Argument

## I. Appellees fail to engage with Texas's well-pled facts.

Texas accurately and sufficiently alleged the Rule increases noncitizens released into Texas. Contrary to Appellee's assertion otherwise, Br. at 40, Texas's Amended Complaint repeatedly alleges the Rule "incentivizes" illegal aliens to enter the United States. ROA.449, 452, 453, 459. These allegations more than suffice to allege a net increase in illegal aliens entering Texas in as much as Texas has alleged the Rule lures illegal aliens to enter Texas who would not, absent the Rule.

### A. Texas pled the Rule increases unlawful and injurious immigration.

Appellees' suggestion that Texas assumes that "baseline" immigration for purposes of measuring an increase is "zero immigration," *id.*, fails to engage genuinely either with Texas's arguments or its pleadings. Texas has not, as Appellees claim, merely alleged "that the number of noncitizens entering and released at POEs will be

3

reduced [absent the Rule]," but has instead specifically alleged the Rule's token presumption and unlawfully-generous exception bypass case-by-case parole determinations, resulting in a 96% parole rate for app users. ROA.447.

Appellees likewise attempt to sidestep the staggering figure of a 96% parole rate as *prima facie* evidence of their use of the Rule to forego their statutory obligation to undertake a case-by-case analysis before granting parole. First, Appellees attempt to minimize the figure with word games, calling it "a good percentage." Br. at 39. Second, Appellees insist that as long as the number is not 100%, Texas cannot allege injury. *Id.* ("Notably, the Complaint does not allege that DHR is issuing parole to all inadmissible noncitizens who cross the southwest border."). Appellees cannot simply wave away Texas's well-pled allegations that the Rule admits illegal aliens into Texas at an alarming rate.

### B. Appellees' factual arguments cannot overcome Texas's allegations.

Appellees ask the Court to ignore Texas's well-pled allegations by challenging the veracity of those allegations, and then engaging in a little speculation of their own. Br. At 42. Appellees argue that the appointment exception is necessary because it incentivizes "noncitizens with potentially meritorious asylum claims" to schedule entry at POEs lest they be subject to a presumption on ineligibility. *Id.* This assertion is wrong for a variety of reasons. *First*, Appellees making the case for their preferred policy has nothing to do with whether that policy injures Texas, and finds Appellees engaged in precisely the sort of policy-as-litigation argument of which they accuse Texas. *Second*, Appellees defeat Texas's standing with factual arguments. "For standing purposes, [the court must] accept as valid the merits of [plaintiff's] legal

4

claims." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022). Texas's Complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*Third*, even taking up the factual argument Appellees seek to make, it ignores the fact that the Rule will not simply incentivize "noncitizens with potentially meritorious asylum claims," to seek entry at Texas's borders, but that it will incentivize any aliens of all sorts—whether they seek parole, or simply the benefits of living under the umbrella of services provided by Texas. Appellees similarly elide the siren-song implications of the Rule's perverse incentive in their factual background with the paradisical statement that "the Rule incentivizes noncitizens who are already seeking to enter the United States to schedule their entries at POEs rather than irregularly crossing between POEs or presenting at POEs without appointments." Br. At 12.

Yet Appellees continue their factual attack, leading the Court down an increasingly speculative path and talking themselves in circles. Appellees insist that, at the pleadings stage, Texas's allegation that illegal immigrants burden state services "depends on an 'attenuated chain of inferences.'" Br. at 43 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S 398 (2013)). Defendants would have the Court believe that a reasonable inference from the Complaint is that illegal immigrants will—all 96% of those paroled under the Rule—leave the State until their appearance date, or otherwise live their lives—to a person, mind—without imposing upon a single dime of the State's finances. *Clapper*'s chain-of-inferences analysis does not require the Court to indulge

5

wild hypotheticals and Texas's complaint need not disprove the preposterous to survive a 12(b) motion.

Nor can Appellees make up their minds about the effects of the Rule. On the one hand, the Rule creates a super-legal presumption of ineligibility. Br. at 34 ("The Rule creates a rebuttable presumption of asylum ineligibility, beyond the pre-existing statutory and regulatory requirements for applying for and obtaining asylum, that is applicable to certain noncitizens who cross the southwest border."). On the other hand, the Rule creates an exception to the presumption for aliens booking an appointment through the app. Br. at 12 ("Individuals who are in Mexico may also avoid the presumption of asylum ineligibility under the 'appointment exception' by using the CBP One app to pre-schedule an appointment at a POE."). On yet another hand, Appellees, tell the Court, the Rule "does not govern or dictate the parole determinations for noncitizens who schedule CBP One appointments to present at POEs." Br. at 34. Appellees thus both boast about the Rule's putatively powerful effects on immigration and, virtually simultaneously, assert it has no effect on immigration. Even if the Court could consider such factual arguments against Texas's well-pled Complaint, Appellees' argument simply makes no sense. Moreover, it is belied by the 96% parole rate effectuated under the Rule.

## II. Appellees fail to engage with applicable law.

Appellees accuse Texas both of reading *Enforcement Priorities* too narrowly and of offering a theory of standing with "startling implications." *Texas v. United States*, 599 U.S. 670 (2023); Br. at 24, 36. But both accusations refuse to address the Supreme Court's plain language, as well as binding precedent from this circuit.

## A. *Enforcement Priorities* is not a sweeping bar on State standing.

*Enforcement Priorities* was explicit about how widely courts and litigants should read its holding: "The Court's standing decision today is narrow and simply maintains the longstanding jurisprudential status quo." 599 U.S. at 686 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Indeed, there appears to have been unanimous on this point. *Id.* at 710 ("The Court … holds only that, with some small and equivocal limitations that I will discuss, no party may challenge the Executive's 'arrest and prosecution policies.'") (Alito, J., dissenting).

Appellees ignore these admonishments about taking *Enforcement Priorities*, and instead offer their own list of propositions for which the case stands, without bothering to attribute the list to anything in the Court's actual opinion. Br. at 36-37. But *Enforcement Priorities* was an "extraordinarily unusual lawsuit" because the States "want[ed] a federal court to order the Executive Branch to alter its arrest policies so as to make more arrests." *Id.* at 686. Undeterred by this narrowing language, Appellees attempt to graft *Enforcement Priorities* onto this case by misrepresenting the relief Texas seeks. Texas does not seek to force Appellees to make more arrests—or to alter specific parole decisions—instead, Texas seeks an order requiring Appellees to follow the statutorily-required process for making parole determinations, which they seem to think the Rule exempts them from having to undertake. In short, this is a case about process. The application of statutorily-mandated case-by-case parole determinations—in sharp contrast to the Rule's sidelining of individual consideration in favor of *en masse* determinations under the guise of a presumption and its exception—would not, and has never, resulted in the massive influx of illegal aliens into Texas. 8 U.S.C. § 1182(d)(5)(A); ROA.440.

7

If Appellees were ordered to follow the case-by-case process for parole determinations, the injuries Texas suffers from Appellees' unlawful parole procedures would subside—that is the theory Texas has duly pled. Appellees' disagreement with that theory is not the proper basis for a jurisdictional challenge.

### B. Appellees cannot ignore binding Fifth Circuit precedent.

In addition to reading *Enforcement Priorities* far too broadly, Appellees do not appear to have read this circuit's precedent on State standing at all. If they have, they fail to cite or otherwise meaningfully engage with it.

"Texas's standing [can be] robustly supported by … big picture evidence" where a challenged rule "is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents." *Texas v. Biden*, 20 F.4th 928 at 971 (5th Cir. 2021). Indeed, even showing traceability does not require demonstrating that the Rule is "the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 659, 675 (2021). As this circuit has held, Texas need only show that the Rule "exacerbate[s]" or "contribute[s]" to its injuries. *Texas v. United States (DACA)*, 50 F.4th 498, 519 (5th Cir. 2022); *see also Massachusetts v. EPA*, 549 U.S. 497, 523 (2007) (determining that it was enough that the EPA's decision "contribute[d] t Massachusetts' injuries.").

Other courts have held similarly. *See*, *e.g.*, *Texas v. Garland*, No. 5:23-CV-034-H, 2024 WL 967838, at *23 (N.D. Tex. Feb. 27, 2024) (holding Texas "can show standing even if there is *some possibility* that any given person would inflict such costs even without the challenged action.") (emphasis added).

## Conclusion

The Court should reverse the Trial Court's granting of Appellees' Rule 12(b)(1) motion and remand for further proceedings.

Dated: January 10, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Deputy Chief, Special Litigation Division
Texas State Bar No. 24060998
Ryan.Kercher@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700

COUNSEL FOR APPELLANT

## Certificate of Service

On January 10, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Dep. Chief, Special Litigation Division

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 1,656 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Dep. Chief, Special Litigation Division